S90A0383. CITIZENS FOR ETHICAL GOVERNMENT, INC. v. GWINNETT PLACE ASSOCIATES, L.P.

(392 SE2d 8)

CLARKE, Chief Justice.

The controversy underlying this action arose when Citizens for Ethical Government, Inc. ("Citizens") sought to solicit signatures for the recall of an elected official in Gwinnett Place Mall. The general manager of the mall informed Citizens that mall policy prohibited political activity and solicitation in the mall. Citizens then filed this action seeking to enjoin enforcement of the policy. The trial court denied the injunction, holding that neither the United States nor the Georgia Constitution requires the owners of a privately owned and operated shopping center to permit the distribution of petitions unrelated to the operations of the center. We affirm.

1. Appellee contends that this appeal should be dismissed as moot. Appellee points out that the recall campaign has been completed. Citizens cannot reap any benefit from this court's decision on the merits of the case. Citizens, on the other hand, agree that the particular controversy is moot, but argue that the merits should be addressed because the alleged error is capable of repetition and likely to evade review indefinitely.

We have held that the merits of a moot case may be reviewed when the error is capable of repetition and yet evades review. *Chastain v. Baker*, 255 Ga. 432 (339 SE2d 241) (1986). The alleged error in this case is the refusal to enjoin a policy of prohibiting political solicitation in the mall. Appellants base their claim of right to petition in the mall on the Georgia Constitution's guarantees of the right to petition and right to recall elected officials, and on the Recall Act of 1989. See Georgia Constitution of 1983, Art. I, Sec. I, Par. IX; Art. II, Sec. II, Par. IV; and OCGA § 21-4-1 et seq. Due to the statutory time limits imposed on the petitioners in a recall effort, any claim based on the right to collect signatures for a recall of an elected official would almost certainly be moot by the time it was appealed to this court. We conclude, therefore, that this case falls within the limited class of cases that we may review even though they are moot.

2. Citizens argue that shopping malls are the "new town centers," serving the functions of the public square. They assert that shopping malls, although they are privately owned and operated, have become a public forum dedicated to the public use. They also assert that in drafting the Recall Act of 1989, the legislature intended for petitions for recall to be circulated in any place except where alcoholic beverages are served. OCGA § 21-4-8 (a). They urge this court to construe the Georgia Constitution to guarantee public access to shopping malls to petition for a recall election.

This court recognizes that shopping malls represent a fertile po-

tential source of signatures for petitioners in a recall election effort. Petitioners' convenience, however, does not create a constitutional right of access to private property for political activity. In *Lloyd Corp. v. Tanner*, 407 U. S. 551 (92 SC 2219, 33 LE2d 131) (1972), the United Stated Supreme Court held that, under the federal constitution, the owner of a privately owned and operated shopping center may prohibit the distribution of handbills or petitions unrelated to the operations of the center. Most states that have considered the issue have determined that their state constitutions do not require privately owned shopping centers to permit political activities on their premises. See, e.g., *Fiesta Mall Venture v. Mecham Recall Committee*, 159 Ariz. 371 (767 P2d 719) (1989); *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Ins. Co.*, 512 Pa. 23 (515 A2d 1331) (1986); *Cologne v. Westfarms Assoc.*, 192 Conn. 48 (469 A2d 1201) (1984).

The property at issue here is a privately owned and operated shopping mall that is generally open to the public for shopping, dining and entertainment. Since the mall's opening, its owners have enforced a policy prohibiting all solicitation and political activity in the mall. The policy has been applied uniformly to all persons and organizations without regard to the content or format. We hold that nothing in the Georgia Constitution or the Recall Act of 1989, either separately or together, establishes a right of private citizens to enter onto such property to solicit signatures for a recall petition. In so holding we adopt the reasoning of *Lloyd Corp. v. Tanner*, supra, and decline to follow the reasoning of the California Supreme Court found in *Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899 (592 P2d 341) (1979).

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs specially.*

BENHAM, Justice, concurring specially.

It is apparent from the record of this case that the recall campaign, the particular political process which was the beginning point for this litigation, has been completed. Appellee has suggested that this appeal is, therefore, moot and must be dismissed. I agree that it should be, but I concur because I believe this court has reached the correct conclusion.

Under the Appellate Practice Act, the dismissal of an appeal is mandatory for the three specific instances contained in subsection (b) of OCGA § 5-6-48, [cit.], one of which is "(3) Where the questions presented have become moot." "A moot case is one which seeks to determine an abstract question which does not arise upon *existing* facts or rights." [Cit.]

". . . 'This court will upon its own motion dismiss an appeal where it affirmatively appears that a decision would be of no benefit to the complaining party. [Cit.] The fact that the appellants might possibly derive some future benefit from a favorable adjudication on an abstract question will not require this court to retain and decide the case. [Cit.]' " [Cits.] Of course, a case may be moot, but, because the error is capable of repetition *and yet evades review*, the appeal will be considered. [Cits.] [*Chastain v. Baker*, 255 Ga. 432, 433 (339 SE2d 241) (1986).]

The alleged error in the present case, refusing an injunction against appellee's policy of prohibiting political activity and solicitation on its commercial property, is clearly capable of repetition. I do not believe, however, that it is such an error as will necessarily evade review. In order to justify reaching the merits of the constitutional claims involved, we have narrowed the issue to the right to use private commercial property to solicit signatures specifically for recall campaigns and do not address the right of politically active citizens to insist on using the private commercial property of others for political purposes other than recall campaigns. This narrow approach invites piecemeal litigation, requiring that we address separately every political purpose for which anyone wishes to use the private commercial property of another. The issue is much broader and should be considered in a broader context than this single recall campaign. While I agree that the trial court was correct in denying appellant an injunction, and I agree with the rationale employed by this court in affirming the judgment below, I believe that the better and more prudent approach would be to wait for a proper case in which to decide the broader issue of the right to use private commercial property for political purposes generally.

DECIDED JUNE 8, 1990.

*Clark & McLaughlin, Michael C. Clark,* for appellant.
*Kitchens, Kelley, Gaynes, Huprich & Shmerling, David P. Kitchens, Mark A. Kelley,* for appellee.
*Altman, Kritzer & Levick, Mark J. Levick, Edward J. Sack, Julie Edelson,* amici curiae.